UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
MILWAUKEE DIVISION

| | |
|---|---|
| CHRISTOPHER DAWES, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> vs. <br><br> COLLECTO, INC. d/b/a EOS CCA and US ASSET MANAGEMENT, INC., <br><br> Defendants. | Case No.: 16-cv-149 <br><br> **CLASS ACTION COMPLAINT** <br><br> **Jury Trial Demanded** |

## INTRODUCTION

1. This class action seeks redress for collection practices that violate the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*. (the "FDCPA"), and the Wisconsin Consumer Act, Chapters 421-427, Wisconsin Statutes (the "WCA").

## JURISDICTION AND VENUE

2. The court has jurisdiction to grant the relief sought by the Plaintiff pursuant to 15 U.S.C. § 1692k and 28 U.S.C. §§ 1331 and 1337. Venue in this District is proper in that Defendant directed its collection efforts into the District.

## PARTIES

3. Plaintiff Christopher Dawes is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

4. Plaintiff is a "consumer" as defined in the FDCPA, 15 U.S.C. § 1692a(3), in that Defendant sought to collect from him a debt allegedly incurred for personal, family or household purposes, namely an alleged cell phone service bill.

5. Plaintiff is also a "customer" as defined in the Wisconsin Consumer Act, Wis. Stat. § 421.301(17), in that he engaged in a consumer transaction.

6. Defendant Collecto, Inc. ("EOS") is a foreign corporation with its principal place of business located at 700 Longwater Dr. Norwell, MA 02061. It does business under the fictitious or trade name "EOS CCA."

7. EOS is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others.

8. EOS is engaged in the business of collecting debts owed to others and incurred for personal, family or household purposes. EOS is a debt collector as defined in 15 U.S.C. § 1692a.

9. Defendant US Asset Management Inc ("USAM") is a foreign corporation with its principal place of business located at 700 Longwater Dr. Norwell, MA 02061.

10. USAM is engaged in the business of a collection agency, in that it purchases and receives assignment of consumer debts that are in default at the time USAM acquires them.

11. The FDCPA treats assignees as debt collectors if the debt sought to be collected was in default when acquired by the assignee, and as creditors if it was not. 15 U.S.C. § 1692a(6)(F)(iii); *Schlosser v. Fairbanks Capital Corp.*, 323 F.3d 534, 536 (7th Cir. 2003), *citing Bailey v. Sec. Nat'l Serving Corp.*, 154 F.3d 384, 387 (7th Cir. 1998); *Whitaker v. Ameritech Corp.*, 129 F.3d 952, 958 (7th Cir. 1998); *Pollice v. Nat'l Tax Funding, L.P.*, 225 F.3d 379, 403-04 (3d Cir. 2000); *Wadlington v. Credit Acceptance Corp.*, 76 F.3d 103, 106-07 (6th Cir. 1996); *Perry v. Stewart Title Co.*, 756 F.2d 1197, 1208 (5th Cir. 1985).

12. USAM uses third party debt collectors, including EOS, to collect allegedly defaulted debts that have been assigned to USAM.

13. A company meeting the definition of a "debt collector" under the FDCPA (here, USAM) is vicariously liable for the actions of a second company collecting debts on its behalf. *Pollice*, 225 F.3d at 404-05 (holding that cases holding assignee vicariously liable for its

2

attorneys' FDCPA violations applies equally to non-attorney debt collectors); *Schutz v. Arrow Fin. Servs., LLC*, 465 F. Supp. 2d 872, 876 (N.D. Ill. 2006) (following *Pollice*, disagreeing with *Scally*); *contra Scally v. Hilco Receivables, LLC*, 392 F. Supp. 2d 1036, 1039 (N.D. Ill. 2005).

14. USAM, directly or indirectly, is a debt collector under the above arrangement and is jointly responsible for EOS's actions. 15 U.S.C. § 1692a(6).

**FACTS**

15. Plaintiff entered into a consumer transaction with "AT&T Mobility" for cell phone service.

16. Prior to March 23, 2015, Plaintiff's account with AT&T Mobility went into default.

17. Prior to March 23, 2015, and after Plaintiff's account with AT&T Mobility was in default, AT&T Mobility sold or otherwise assigned the ownership rights to Plaintiff's account to USAM.

18. On or around March 23, 2015, EOS mailed a debt collection letter to Plaintiff regarding an alleged debt, allegedly owed to "AT&T Mobility." A copy of this letter is attached to this complaint as Exhibit A.

19. The alleged debt identified in Exhibit A was an alleged cell phone service debt, allegedly owed to AT&T Mobility and used only for personal, family or household purposes.

20. Upon information and belief, Exhibit A is a form letter, generated by a computer, and with the information specific to Plaintiff inserted by the computer.

21. Exhibit A purports to offer a settlement of 25% of the alleged total debt amount due.

22. Exhibit A contains the following text:

3

> Our client has authorized the following resolution to your balance as noted above:
> Lump Sum Settlement of 1 payment of **$48.18** to be paid no later than **04/22/15**.

Exhibit A.

23. Exhibit A falsely states or implies that the settlement offer must be "paid no later than 04/22/15."

24. Upon information and belief, EOS had authority from the creditor to settle consumers' accounts for 25% of the amount owed, or less, at any time. The creditor, USAM, is a related entity to EOS.

25. Statements such as a settlement offer is a "limited time offer," or that the offer expires on a specific date, or that payments must be received by that date, are false and misleading because the same offer is, upon information and belief, available at any time.

26. Such false statements are material false statements, as they impart in the unsophisticated consumer, a false belief that he or she must hurry to take advantage of a limited-time opportunity, when in reality, there is no such time limit.

27. The Seventh Circuit has established "safe harbor" language regarding settlement offers in collection letters:

> As in previous cases in which we have created safe-harbor language for use in cases under the Fair Debt Collection Practices Act, we think the present concern can be adequately addressed yet the unsophisticated consumer still be protected against receiving a false impression of his options by the debt collector's including with the offer the following language: "We are not obligated to renew this offer." The word "obligated" is strong and even the unsophisticated consumer will realize that there is a renewal possibility but that it is not assured.

*Evory v. RJM Acquisitions Funding L.L.C.*, 505 F.3d 769, 775-76 (7th Cir. 2007).

28. Defendant did not use the safe harbor language in Exhibit A.

4

29. Upon information and belief, the deadline in Exhibit A to respond to the settlement offer is a sham. There is no actual deadline. The sole purpose of the purported deadline is to impart in the consumer a false sense of urgency.

30. Exhibit A also states:

| | | |
|---|---|---:|
| Principal: | $ | 192.70 |
| Interest: | $ | 0.00 |
| Fees/Coll Costs: | $ | 0.00 |
| Other Accounts: | $ | 0.00 |
| **Total Due:** | **$** | **192.70** |

31. Exhibit A threatens to collect a "Fees/Coll Costs."

32. The unsophisticated consumer would interpret "Fees/Coll Costs" as meaning a fee incurred for the costs of collection.

33. Although the amount in the "Fees/Coll Costs" field in Exhibit A is $0.00, the letter implies that there could be collection fees added to the debt in a future letter. *See, eg. Tylke v. Diversified Adjustment Serv.*, No. 14-cv-748; 2014 U.S. Dist. LEXIS 153281, *7 (E.D. Wis. Oct. 28, 2014) ("the inclusion of a collection fee, even one showing a balance of zero, could imply the future possibility of one.").

34. Plaintiff's cell phone service contract with AT&T Mobility was for services, specifically AT&T cellular telephone services, and involved agreements to render services and defer payment, under which finance charges, including but not limited to early termination fees, were or could be imposed, and which obligation was payable in installments. Such agreements are "consumer credit transactions" under the WCA, Wis. Stat. §§ 421-427.

35. Wis. Stat. § 421.301(10) defines a "consumer credit transaction":

> a consumer transaction between a merchant and a customer in which real or personal property, services or money is acquired on credit and the customer's obligation is payable in installments or for which credit a finance charge is or may be imposed, whether such transaction is pursuant

5

> to an open-end credit plan or is a transaction involving other than open-end credit. The term includes consumer credit sales, consumer loans, consumer leases and transactions pursuant to open-end credit plans.

36. Plaintiff's contract was for "services," namely cellular telephone service.

37. Plaintiff's cellular phone contract was not a pre-paid contract.

38. Plaintiff's cellular phone service contract was an extension of "credit." Wis. Stat. 421.301(14); *Murray v. New Cingular Wireless Servs.*, 432 F. Supp. 2d 788, 791 (N.D. Ill. 2006):

> [C]onsumers who sign up for a wireless phone plan are extended credit because they pay for service at the end of the month rather than buying the minutes in advance. ... At a minimum, a consumer must sign up for a plan that is $29.99, but this credit can extend into hundreds or thousands of dollars depending on the consumer's actual use and the plan selected. Virtually 100% of the wireless phone service purchased by the consumer would be on credit.

39. Upon information and belief, Plaintiff paid an amount monthly for a set number of minutes and paid extra for minutes he used exceeding their monthly allotment. The ability to use cellular minutes above the number designated by the customer's plan and to pay for those minutes later, is clearly incurring debt and deferring its payment. Wis. Stat. § 421.301(14).

40. Plaintiff's cellular telephone service contract was payable in installments.

41. Under a cellular telephone services contract, the consumer incurs an obligation to pay the entire amount of the contract in monthly installments over the contract's term.

42. For example, under a cellular telephone service plan labeled "$50 per month" with a 2-year term, the consumer is obligated to pay, at a minimum, $1,200.00. The payments are made in 24 monthly installments of $50 each.

43. Upon information and belief, the Customer Agreement included an early termination fee and other fees incidental to the payments for phone service.

6

44. Such additional fees, including but not limited to the early termination fee, are "finance charges." Wis. Stat. § 427.301(20).

45. The WCA specifically prohibits the attachment of collection fees and other "default charges" on consumer credit transactions, even if the fee is separately negotiated. Wis. Stat. § 422.413(1); *Patzka v. Viterbo College*, 917 F. Supp. 654, 659 (W.D. Wis. 1996).

46. Wis. Stat. § 422.413(1) provides:

> no term of a writing evidencing a consumer credit transaction may provide for any charges as a result of default by the customer other than reasonable expenses incurred in the disposition of collateral and such other charges as are specifically authorized by chs. 421 to 427.

47. Neither Wis. Stat. § 422.202, entitled "Additional charges," nor any other section of the WCA, lists collection fees as a permissible fee a creditor may charge in connection with a consumer credit transaction.

48. Because cellular telephone service contracts are consumer credit transactions, Exhibit A falsely states or implies that EOS or USAM have a right to add collection fees to consumers' alleged cellular telephone service debts.

49. Even if a provision of any agreement between Plaintiff and AT&T Mobility for the provision of cellular telephone services would purport to permit AT&T Mobility to impose a collection fee, the WCA prohibits such fees. Wis. Stat. § 421.106(1) ("Except as otherwise provided in chs. 421 to 427, a customer may not waive or agree to forego rights or benefits under chs. 421 to 427."); *See also Lox v. CDA, Ltd.*, 689 F.3d. 818 (7th Cir. 2012) (false representation that attorney fees would be added when they could not be, violated 1692e).

50. 15 U.S.C. § 1692e generally prohibits a debt collector from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt."

7

51. 15 U.S.C. § 1692e(2) specifically prohibits the "false representation of the character, amount, or legal status" of an alleged debt, or the "false representation of…compensation which may be lawfully received by any debt collector for the collection" of an alleged debt.

52. 15 U.S.C. § 1692e(5) specifically prohibits threatening "to take any action that cannot legally be taken or that is not intended to be taken."

53. 15 U.S.C. § 1692e(10) specifically prohibits the "use of any false representation or deceptive means to collect or attempt to collect any debt."

54. 15 U.S.C. § 1692f generally prohibits "unfair or unconscionable means to collect or attempt to collect any debt."

55. 15 U.S.C. § 1692f(1) specifically prohibits the "collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law."

56. Wis. Stat. § 427.104(1)(j) specifically prohibits a debt collector from "[c]laim[ing], or attempt[ing] or threaten[ing] to enforce a right with knowledge or reason to know that the right does not exist."

57. Wis. Stat. § 427.104(1)(L) also specifically prohibits a debt collector from "[t]hreaten[ing] action against the customer unless like action is taken in regular course or is intended with respect to the particular debt."

## COUNT I – FDCPA

58. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

8

59. <u>Exhibit A</u> includes false statements to the effect that the settlement offer is for a limited time only.

60. Upon information and belief, the creditor and/or EOS would settle Plaintiff's and Class members' debts at 25% of the alleged total debt amount and likely for less at any time, regardless of the supposed deadline.

61. Defendants violated 15 U.S.C. §§ 1692e, 1692e(10) and 1692f.

## COUNT II – FDCPA

62. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

63. Defendants' threat to collect a fee in <u>Exhibit A</u> is a false, deceptive, and/or misleading representation to the unsophisticated consumer recipient.

64. Defendants have no legal basis for collecting a collection fee on Plaintiff's alleged cellular telephone service debt. The WCA prohibits such fees. *Patzka*, 917 F. Supp. at 659.

65. <u>Exhibit A</u> falsely represents that Defendant is lawfully entitled to collect a collection fee.

66. <u>Exhibit A</u> creates a false impression as to its authorization or approval for collecting a collection fee.

67. Defendants violated 15 U.S.C. §§ 1692e, 1692e(2), 1692e(5), and 1692e(10).

## COUNT III -- WCA

68. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

9

69. <u>Exhibit A</u> also claims, attempts, or threatens to enforce a right to a collection fee, even though Defendant knew or should have had reason to know that no such right existed at the time the letters were sent.

70. The WCA prohibits the addition of collection fees to debts arising from consumer credit transactions, including the alleged debt referenced in <u>Exhibit A</u>.

71. Defendant violated Wis. Stat. §§ 427.104(1)(j) and 427.104(1)(L).

## **CLASS ALLEGATIONS**

72. Plaintiff brings this action on behalf of a Class, consisting of (a) all natural persons in the State of Wisconsin (b) who were sent a collection letter in the form represented by <u>Exhibit A</u> to the complaint, (c) seeking to collect a debt for personal, family or household purposes, (d) allegedly owed to USAM, (e) on or after February 10, 2015, (f) that was not returned by the postal service.

73. The Class is so numerous that joinder is impracticable. Upon information and belief, there are more than 50 members of the Class.

74. There are questions of law and fact common to the members of the class, which common questions predominate over any questions that affect only individual class members. The predominant common question is whether the Defendants complied with 15 U.S.C. §§ 1692e and 1692f.

75. Plaintiff's claims are typical of the claims of the Class members. All are based on the same factual and legal theories.

76. Plaintiff will fairly and adequately represent the interests of the Class members. Plaintiff has retained counsel experienced in consumer credit and debt collection abuse cases.

77. A class action is superior to other alternative methods of adjudicating this dispute. Individual cases are not economically feasible.

## JURY DEMAND

78. Plaintiff hereby demands a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court enter judgment in favor of Plaintiff and the Class and against Defendants for:

(a) actual damages;

(b) statutory damages;

(c) attorneys' fees, litigation expenses and costs of suit; and

(d) such other or further relief as the Court deems proper.

Dated: February 10, 2016

**ADEMI & O'REILLY, LLP**

By: /s/ John D. Blythin
Shpetim Ademi (SBN 1026973)
John D. Blythin (SBN 1046105)
Mark A. Eldridge (SBN 1089944)
Denise L. Morris (SBN 1097911)
3620 East Layton Avenue
Cudahy, WI 53110
(414) 482-8000
(414) 482-8001 (fax)
sademi@ademilaw.com
jblythin@ademilaw.com
meldridge@ademilaw.com
dmorris@ademilaw.com